WARREN v. CREW *et al.*

1. **Action of right: EQUITABLE DEFENSE.** It is a good equitable defense in an action of right that defendant purchased and took possession of the premises under and by virtue of a contract, which he had been at all times ready to perform, with the grantor of plaintiff, of which plaintiff had notice at the time of his purchase.

2. **Contract: TIME THE ESSENCE OF: VENDOR AND VENDEE.** Where time, in the payment of the purchase-money, is made the essence of a contract for the sale of real estate, the rights of the vendee will not be forfeited by a non-payment of the money at the time stipulated if the vendor then be absent without having prepared and left with his agent a deed to be delivered to the vendee on the payment of the amount due.

3. **Evidence: PAROL, NOT ADMISSIBLE.** Parol evidence is not admissible to establish a condition to a written contract not embraced in the writing itself.

4. —— **PRESUMPTION ARISING FROM DESTRUCTION OF CONTRACT.** Where a vendor of real estate seeks to avoid the enforcement of his contract to convey, upon the ground that, by its terms, time was the essence thereof, and bound the vendee to a payment of the purchase-money at a specified time, under penalty of forfeiture, which the vendee denied, the fact that the vendor destroyed such contract, when delivered to him by his agent with whom it had been deposited, and when the vendee was soliciting a deed from him thereunder, is strong presumptive evidence that the contract did not contain the stipulations claimed by the vendor.

*Appeal from Clinton District Court.*

THURSDAY, JUNE 13.

AN action of right to recover possession of lot nine, in block eighteen, in the town of Lyons, this State, in which defendant, Crew, proved the successful party by an equitable defense set up in his cross-bill. Warren appeals

*A. R. Cotton* and *W. E. Leffingwell* for the appellant.

*Cook & Drury* and *Ellis Brother* for the appellee.

LOWE, Ch. J.—In substance the case made by the defendant in his cross-bill is this: He claims that, in the fall of 1852, one Dennis Lilley purchased said lot of Dennis Warren (the brother and alleged vendor of the plaintiff) for the sum of fifty dollars, payable in three months, with ten per cent interest. He is not clear that the contract of purchase was reduced to writing; if it was, the same is lost, or has been destroyed by Dennis Warren; that it was placed in the hands of one James Haslett, of Lyons, for safe-keeping, who was the agent of Warren. That, in a few days thereafter, Warren left for the pineries or some other place, and did not return till the next spring or summer; that Lilley, very soon after the purchase, took possession of the lot and improved the same, occupying the shanty which he had put up thereon; that, at the expiration of three months, Lilley had the money, and was ready and willing to pay the same if he could get his deed for the lot; that Warren was not there to receive the same, or make the deed; that he offered to pay the money to Haslett, Warren's agent, at the time the same was due, if he would give or make a deed for the lot. This, Haslett could not do, and refused to receive the money; that, in the following summer, Dennis Warren returned to Lyons, and Lilley at once tendered him the purchase-money, with interest, and demanded his deed, which he refused to make, or to receive the money; that, in the winter of 1853–4, Dennis Lilley died, having made a will devising all his right and interest in the premises to his son, James Lilley. The will is annexed, confirming the statement; that James Lilley occupied the lot and house till the year 1855, when he sold the same, with all his right, title and interest therein, to Thomas Crew, who is made defendant in plaintiff's petition; that the said Crew has had possession ever since, making additional improvements thereon.

1. ACTION OF RIGHT: equitable defense.

Crew makes another tender of the purchase-money without avail; and as Dennis had conveyed the lot to his brother, Marcus Warren, he makes them both parties to his cross-bill; asks that their deed be set aside, that they be required to accept the purchase-money from him, accompanied with an execution of a deed, etc.

The material points of the reply to this are, a denial of a sale of the lot in question to Dennis Lilley, either verbally or in writing, on the terms stated in the cross-bill, or that Lilley took possession under a contract of sale, and made improvements on the lot, or that he made any tender of the purchase-money, or that Crew has any interest in, or right to, said lot. More especially is it replied, that no written contract of sale was ever executed and delivered to Lilley; but that Dennis Warren made such a paper or contract, and placed it in the hands of James Haslett, his own agent, to be delivered to Lilley, on condition said Lilley should, in three months, pay $50, with ten per cent interest; that such payment was not made, and the contract, therefore, never became operative as such between them, and the same was returned by Haslett to Warren; that the improvements put on said lot were of little value, and made in the absence and without the knowledge of Dennis Warren; that the said Warrens have ever asserted their right to the property, paying the taxes and constructing a sidewalk in front of the same, as required by ordinance of city council, etc.

The issues of fact raised by these pleadings we find from the evidence to be as follows:

1. That Dennis Warren did agree to sell to James Lilley lot nine in block eighteen of the town of Lyons, in the fall of 1852; that this agreement was put in writing and placed in the hands of James Haslett, who was Warren's agent to collect money and pay taxes; that, by the terms, Lilley was to pay fifty dollars, with ten per cent, at

ninety days, for the same; that, under it, Lilley was author-
ized and did take possession at once of the lot, and made
improvements' thereon. The several parts of this propo-
sition are so well supported by the testimony that a special
reference to the same is not felt to be necessary, more
particularly as they are not seriously controverted, and
the defense to the cross-bill rests mainly upon other
grounds.

2. At or about the time it fell due there was a condi-
tional offer on the part of Lilley to pay the purchase-money
and accruing interest to Haslett, the agent; that is to
say, an offer to pay, provided he could have a deed for his
lot. This Haslett was not authorized to make, and the
money was not paid. At this time Warren was absent
from the State, in the pineries of Wisconsin, and did not
return till the spring or summer of 1853. As soon as he
did return, in June or July of that year, Lilley again ten-
dered to him, in coin, the purchase-money, and demanded
his deed; but Warren refused to accept the money or to
carry out the contract by making a deed. Subsequently
a Mr. Briscoe, the lawyer of Lilley, made another tender
with like results, as also did Thomas Crew, after he
became, by purchase from James Lilley, the equitable
owner of said lot.

The facts set out in this proposition are sustained by
the weight of testimony. In the first place, it is shown
that Lilley, about that time, was understood to have some
means and could command a moderate amount of money.
His conduct, as testified to, shows that he was both anx-
ious and persistent throughout to pay and obtain a deed
for the lot; that he even consulted an attorney-at-law, a
Mr. Briscoe, how he should proceed to obtain the title to
the lot he had purchased, as Mr. Warren was absent from
the State. Briscoe testifies that he advised him to go to
Mr. Haslett, Warren's agent, tender him the money and

demand the deed; and Briscoe swears that he knows that Lilley did do so, according to his advice. Mr. Haslett himself remembers that Lilley, about that time, came to him and talked about the matter; wanted his deed; inquired for Warren's address, and perhaps expressed a willingness to pay, but does not remember that he made a tender of the money.

3. The time within which the purchase-money was to be paid was not of the essence of the contract; that is to say, the sale was effectual and operative from the beginning and not dependent or conditional upon a future contingency.

This proposition we deduce from all the circumstances of the case, as disclosed by the testimony. In the first place, the contract of sale was in writing, and it does not appear from the testimony of any witness, not even that of Dennis Warren, that this written contract contained any stipulations of a forfeiture, if prompt payment was not made; or that the same, at the option of the vendor, should be treated as ineffectual and void, if Lilley failed to make payment at the precise time mentioned in the bond.

On the other hand, the acts and declarations of the parties are inconsistent with any such idea. Dennis Warren was one of the original proprietors of the town of Lyons; besides the one in controversy, he owned many other lots in the town. Haslett was his agent to pay taxes. The money for this lot was to be applied in that way. When Lilley refused to pay, without getting a deed, Warren was soon thereafter informed by letter from Haslett of such non-payment, without, however, giving any reason therefor; but in consequence of which, he was advised Haslett could not pay his taxes. This letter is produced by Warren, and annexed to his deposition.

After this, in the spring following, Warren returned down the river, going south to find a market for his lumber. The boat on which he was traveling landed a few minutes at Lyons; but not long enough for him to go on shore. He was hailed, however, by Haslett and others from the shore; among these was Lilley, who said to Warren that he was ready to pay for the lot, and wanted his deed; the reply of Warren was to the effect that he would be back soon and see him about it, or fix it up with him.

Now upon the supposition that the contract had been forfeited and was at an end, for a failure to pay the purchase-money (of which failure Warren was previously advised by letter) this promise of his to fix up the matter on his return was entirely out of place and inconsistent therewith; and so was the conduct of Lilley in demanding his deed and offering the money at that time. Not only so, but in June or July after this, Warren did return and Lilley again tendered him the money and demanded his deed for the lot, in the presence of several witnesses. According to the testimony of those witnesses, Warren did not place his refusal to receive the money and make the deed upon the ground that the contract was forfeited and at an end for the reason that the money had not been paid at the proper time; but assigned a very different reason, namely, that, in consequence of the failure, his taxes had not been paid, and he had been put to additional expense thereby; and that, if Lilley would pay this additional expense, he should have his deed, etc. It is difficult for us to reconcile a refusal to perform the contract upon such a ground, with the idea that the same had been forfeited by its own terms. It seems to us that the most natural response to Lilley's importunities for a deed, would have been, if indeed such was the condition of the contract, that he had lost all right or claim to the lot,

by reason of his default in not paying at the time stip-ulated.

Again, if it should be conceded in this case that time was of the essence of the contract, yet it is clear from the evidence that no deed for the property had been prepared and left with the agent for delivery on payment of the money; nor had the agent the power or the authority to make such deed. The law, in such case, would excuse the non-performance of the contract by the vendee, until the payment of the purchase-money could be accompanied by the title-deed.

2. CONTRACT: time the essence of: vendor and vendee.

To meet this feature of the case and the law applicable thereto, the Warrens claim that, at the time the contract was made, it was understood and agreed that the deed to the lot was not to be made and delivered until Dennis Warren, the vendor, should return from the pineries in the spring; and that, therefore, Lilley was not excused from paying the money at the time specified. If this was true, and adequately sustained by the evidence, it would materially affect the result of this case.

. Dennis Warren does testify that such was the fact. But there are several reasons why we are disinclined to accept the same as reliable.

1. The cross-bill of the defendant, Crew, among other things states that while he was ready and willing to pay the purchase-money when it fell due, he did not do so for the reason that he could not get a deed of convey-ance for the lot. Ordinarily, in law, this would be a sufficient excuse for the non-payment of the purchase-money; not so, however, if the contract of the parties was such that the deed was to be executed at some period sub-sequent to the time when the money should be paid. If, as a matter of fact, so vital a provision of the contract existed, it would have been a good answer to the above point made in the cross-bill, but no such averment is

made in the replication, although it does set up certain special matter in avoidance of the same.

2. The contract between the parties was in writing. Warren, in his deposition, does not testify that the above *3. EVIDENCE: parol, not admissible.* understanding about the time when the deed was to be made, was included in and made a part of the written contract. If it was not, then it would be improper to consider it. If it was a part of the written contract it should have been produced, or its contents shown after proving its loss or destruction. This was not done.

3. The evidence shows that all the papers, including this contract, which Haslett, the agent, had, of Dennis *4. —— presumption arising from destruction of contract.* Warren's, were returned to him, and that this must have occurred on his first return to Lyons, after Haslett had been constituted agent. This was in June or July of 1853. Almost immediately on his return, Lilley sought him out and tendered the money and demanded the deed. Dennis says that on getting this contract back from his agent he destroyed it. Just when he did this is not stated; but the circumstances indicate that it must have been done about the very time that Lilley was pressing him for a performance of the contract, and after he knew there was to be a difficulty about it. The destruction of the contract under such circumstances is somewhat significant. It authorizes an inference unfavorable to the defense set up to the cross-bill. If it contained a clause of forfeiture for non-payment, or a stipulation that a deed was not to be made till Dennis Warren returned from the pineries in the spring, it would have been the dictate of common prudence to have preserved it; for it contained, in itself, the evidence required to protect Warren against an enforcement of the contract. The fact, however, that he destroyed it, is strong presumptive evidence that it did

not sustain Warren's version of the contract. If so, he ought not to prevail in this controversy, and such was the opinion of the court below, which held that, inasmuch as Marcus Warren was not unadvised of Crew's equities, at the time he took a deed from his brother Dennis for the lot, the same should be set aside, and the original contract specially performed in favor of Crew, the legal assignee of the same.

The decree provides that, whatever taxes or other charges on the lot have been paid by the Warrens, should be refunded to them, and a commission was appointed to ascertain the same and report to the court. All of which seems to be proper and just, and we accordingly affirm the same.

Affirmed.