E. MEYER, Appellee, v. W. GOTSDINER et al., Appellants.

No. 38982.

JUNE 24, 1929.

Kimball, Peterson, Smith & Peterson, J. A. Williams, and John J. Hess, for appellants.

Monsky, Katleman & Grodinsky and Tinley, Mitchell, Ross & Mitchell, for appellee.

STEVENS, J.—This action was commenced at law, to recover a balance alleged to be due on account. The defendant, appellant herein, filed an answer and cross-petition, praying an accounting. On motion, the cause was transferred to equity and tried, with the result stated. The items of the account sued upon represent merchandise sold by appellee, a wholesale dealer in fruit and vegetables at Omaha, to appellant, a retail grocer in Council Bluffs. The account covers the period from September 1 to December 6, 1926. None of the items of the account sued on are in dispute. The prayer of appellant for an accounting is based upon certain alleged fraudulent conduct and transactions on the part of Lester Meyer, son of appellee, and part owner of the business, who was the salesman for Council Bluffs. The method of transacting business between the parties is of more than ordinary significance and importance. Frequent calls were made by the salesman upon appellants at their store, where numerous orders for fruit and vegetables were received. These orders were delivered by the salesmen to the proper person at the office in Omaha. Invoices or statements were there made out, by the use of carbon sheets, in triplicate. The original and one carbon copy were given to the driver of the truck who made delivery of the merchandise. When delivery thereof was made, the items were checked with these statements or invoices, and the carbon copy left with appellants. The original, signed by them, was returned to the office in Omaha. The ledger account was there made up from the carbon copy retained in the office and the signed original. Later, statements of the account, in whole or in part, were made up by the bookkeeper and the salesman. In making up the statement of the account, the bookkeeper read the items from the ledger to the salesman, who entered them on the state-

ments. The respective statements were then presented to appellants by the salesman, and settlement·had.

Joseph Gotsdiner, with whom all of the business was conducted for appellant, testified that, before payment was made in any case, he and the salesman checked the items of the statement with the carbon statement or invoices in his possession. All payments·appear to have been made by check. It is claimed by appellants that many of the statements presented by the salesman contained items of merchandise that were not shown upon the invoices; that the items were read by him from the carbon copy of the invoice, and the statements checked by the salesman; that it was the custom for the salesman to check the items not shown on the invoice by a cross. The original statements show crosses at the left of certain items thereof.

It is the further claim of appellants that full payment was made of each statement, but with the explicit agreement and understanding on the part of the salesman that he would either produce the original or signed receipt for inspection, or credit appellant with the amount of the disputed item. The salesman neither produced the original signed receipt nor was credit given for any of the disputed items. This method of settling the accounts was followed during the greater part of 1925 and 1926, and, in fact, during all of the time involved herein.

One further claim of appellant's must be considered in this connection. It is that the salesman, the attorney for appellee, appellants, and others had a conference in November, 1926, in which it was agreed on behalf of appellee that the signed original orders would be produced, or credit given for the disputed items. This claim is not disputed by appellee, but it is contended on his part that all of the statements and ledger accounts had been previously destroyed, but this was not known to the conferee representing him. The explanation offered by appellee for the destruction of these papers is that all original receipts for merchandise and ledger accounts are removed from the office and placed in a store room immediately, or soon after the account has been settled; that they are then, sooner or later, removed from the store room and destroyed, to prevent their accumulation in large quantities.

It will be observed that the method of transacting business between the parties was more than ordinarily precise and definite.

Each invoice or statement delivered to appellant by the truck driver was carefully checked with the merchandise. The original was then signed by appellant, and returned by the driver to appellee. This method afforded full and complete protection to both buyer and seller. Any effort on the part of the seller to pad the account could be at once detected by checking the same with the invoices.

According to the testimony of Joseph Gotsdiner, this method was pursued in every instance, and in every instance, the error, if any, was discovered. Notwithstanding the certainty of the method adopted, appellants claim that they paid approximately a dozen statements in full, each of which contained items for merchandise not shown on the invoices. As stated, these payments are claimed to have been made because of the promise of the salesman to either produce the signed original of the disputed item or credit appellant therefor. One of two theories must be correct. Either appellants did not preserve or produce all of the invoices, or, if they did, they knew definitely, at the time the payments were made, that the statement was false. Thus, the element of apparent certainty in the method of transacting the business introduces into the case elements of doubt. Appellants do not claim to have independent recollection of the transactions or of the items. They naturally and necessarily rely upon the invoices. The salesman for appellee testified that, in two or three instances, a discrepancy between the invoices and the statement presented was discovered. As to these items, he testified that the original signed receipts were produced before payment was made. It is significant in this connection that shortages and rebates are noted on some of the statements, and proper deductions made therefor. This was done before payment was made.

Lester Meyer, the salesman, denied the alleged agreements on his part to produce the original receipt or credit the amount in dispute *in toto*, and testified that settlements were made in every instance after appellants had satisfied themselves that the statement was correct. If appellants preserved all of the invoices originally checked with the merchandise and with the signed original, they knew positively that there could be no discrepancy between them and the statement rendered. There is a total absence of any other proof that the statements were not correct.

Appellants do not claim to have any independent recollection as to the items of merchandise received, nor of shortage thereof.

It is well settled that, where one voluntarily pays a disputed claim with full knowledge of the facts, the sum paid  cannot be recovered on the ground of its invalidity. *Garner v. Fry,* 104 Iowa 515; *Anderson v. Cameron,* 122 Iowa 183. It is equally well settled that, where one voluntarily destroys evidence of a claim asserted by him for money due, a presumption is created against him. *Warren v. Crew,* 22 Iowa 315; *Wallace v. Berger,* 14 Iowa 183.

The demand of appellants that the appellee produce the original signed receipt or invoice for the merchandise must have been based upon some doubt in their own minds as to the accuracy with which the invoices had been preserved by them. According to their testimony, the repeated promises of the salesman to produce these signed receipts were never performed. Nevertheless, the excuse offered by appellants for making the payments, as claimed by them, is that they had confidence in the salesman. In view of the facts stated and the method of transacting business between the parties, the confidence thus manifested is contrary to ordinary observation and experience. The aggregate of the payments claimed to have been made of improper items is $572.88. This exceeds the amount claimed by appellee to be due. The record contains no testimony tending to show that the method of handling and disposing of signed invoices and ledger accounts by appellee was not as claimed by him. Manifestly, it would have been difficult for appellant to have secured evidence on this point.

It requires more than ordinary credulity for the court to accept the contentions of appellant. It would indeed be unusual for a merchant of years of experience to repeatedly pay accounts which he reasonably knew to be erroneous, upon the mere promise of the salesman to furnish proof of the accuracy thereof. His repeated failure to do so would have certainly aroused some suspicion, at least, as to his credibility. It may be that the rule which prevents one who has voluntarily paid a demand which he knew he did not owe from recovering it, will be avoided by an express promise to repay if found invalid; but the promise alleged in this

case is, in our opinion, not sustained by the preponderance of the evidence.

Appellant was not permitted to offer testimony of similar controversies between appellee and other customers in Council Bluffs. The theory upon which this testimony was offered is that it bore upon the question of fraudulent intent. It seems to us that there is an almost utter absence of proof of fraud. The method of transacting the business between the parties quite conclusively negatives every reason for the alleged promises of the salesman to produce the original receipts. The ruling of the court was not, in our opinion, erroneous.

We conclude that the finding and judgment of the district court is sustained by the preponderance of the evidence.—*Affirmed*.

ALBERT, C. J., and FAVILLE, DE GRAFF, and MORLING, JJ., concur.