STANDARD OIL COMPANY (Indiana), Appellant, v. STUBBS-AUCKLAND OIL COMPANY et al., Appellees.

No. 43164.

490

FEBRUARY 13, 1936.

REHEARING DENIED JUNE 19, 1936.

Parrish, Guthrie, Watters & Colflesh and Maxwell A. O'Brien, and Richard C. Leggett, for appellant.

Thoma & Thoma, for appellees.

KINTZINGER, J.—The Standard Oil Company, plaintiff and appellant in this action, owned a lease upon a certain filling station in the town of Fairfield, Iowa, under which it had the right to the possession of said property from March 3, 1930, to October 7, 1932. This right was determined by a judgment in a forcible entry and detainer action against the defendants, and was not appealed from. Although the record contains much evidence relating to that action, it cannot be considered here. Plaintiff had been operating the station in question through defendant Auckland, under a regular agency contract, until March 3, 1930. In

this action plaintiff alleges that it was wrongfully, unlawfully, and fraudulently deprived of the possession of said filling station from March 3, 1930, until October 7, 1932. In its petition, plaintiff asked either (1) that it be given possession of the property for the length of time it had been deprived thereof, or (2) that the defendants be decreed trustees of the premises and the business conducted therein, for the benefit of plaintiff, and that *they be compelled to account for all profits* they made therefrom from March 3, 1930, to October 7, 1932. The court denied the relief asked for in the first alternative, but found that the defendants had fraudulently and wrongfully deprived plaintiff of the possession of said property during the period claimed, and adjudged and decreed that "the defendants account to the plaintiff for what they have received therefrom, and not be permitted to reap a profit from their wrongful act," and on March 29, 1934, ordered, adjudged, and decreed that *"defendants make an accounting to the plaintiff for the income and profits from said station* from March 3, 1930, to the expiration of the term of the lease, October 7, 1932." This judgment was never appealed from by appellees, was acquiesced in by appellant, and, therefore, is the law of this case.

The court in said decree also ordered that:

"The defendants * * * permit plaintiff * * * to make a complete audit * * * of all the books and records * * * of defendants pertaining to * * * the operation of the station involved * * * and * * * furnish plaintiff, * * * all of its records * * * showing disbursements and expenditures; also the records of the Auckland-Stubbs bulk oil and gasoline plant showing the quantities of oil and gasoline sold and/or delivered to said service station during the * * * time covered by said audit * * * and all other records showing the receipt of oil and gasoline at said service station from all sources, *together with the records of sales and deliveries* made from said * * * station * * * beginning with the 3rd day of March, 1930, to and including the 7th day of October, 1932 * * *. That the plaintiff * * * make a report to the court showing the result of said audit * * * together *with the amount found to have been the gross income of said service station during said period* * * * and the various items which the defendants * * * have charged against said income as cost or operating expense of said * * * station."

The court in said decree reserved jurisdiction

"to make such further orders as may be necessary * * * for the purpose of ascertaining and finally determining the amount due plaintiff herein and for the purpose of entering final judgment and decree. * * * That if the plaintiff was unable to make a complete * * * audit of the records * * *, that upon application by the plaintiff, an order would be entered by the court requiring the defendants * * * to bring the records and books into court and *make an accounting in court for the income and profits of said service station* during the period * * * referred to and * * * enter final * * * decree after said accounting has been taken."

Pursuant to that order, plaintiff demanded from defendants all books and records which would enable them to determine the income and profits made in the operation of said station during the time in question. Plaintiff states that defendants claimed they had no records showing how much had been made, what income had been received, or what expenses were incurred at the station in question during the period named. Plaintiff reported this information to the court and filed an application for "an accounting in court," alleging, in substance, that the total profits derived by the defendants from the operation of said filling station during the period in question was $17,905, and that defendants had also unlawfully deprived it of certain storage tanks of the value of $240, and asked that the defendants be required to appear and show cause why judgment should not be entered against them for the amounts claimed.

Defendants filed a resistance to this application, alleging that they had made no profits from the filling station in question, but that it had been operated by them in connection with a bulk plant and three other filling stations belonging to defendants as one unit, and that during the period in question they had suffered a loss of $1,407 in the operation of said unit. At the close of the hearing, the court denied appellant's claim for profits, but entered judgment for $150.72 for the value of storage tanks. Thereupon, plaintiff filed a motion for rehearing which was overruled. Hence the appeal.

The evidence shows that a bulk-plant and four filling stations of the defendants were operated as a single unit; that no separate account had been kept for any of said stations, includ-

ing the one in question; and that it was impossible to determine the income or profits derived from the operation of the station in question. This was due to the fact that all delivery slips for gas and oil furnished the station in question, and other stations of defendants, had been destroyed, and that the only books and records they had related to the bulk plant and all of their filling stations as one unit. It was shown that when a tank of gasoline was delivered at the station in question or any other station of defendants, a slip or ticket was given to Mr. Auckland, who claimed that after the tickets had been paid for, they had no further use for them, and they were destroyed. It, therefore, became impossible to determine from defendants' records the exact amount of gas and oil handled by the station in question; it likewise became impossible to determine the receipts and profits derived from sales by that station.

I. Thereupon, for the purpose of showing the quantity of gas and oil probably sold at the filling station in question, the appellant, as secondary evidence, offered and proved the amount of gasoline and oils sold at two or three other Standard Oil stations in Fairfield, similarly situated with the one in question. Such evidence was strenuously objected to by appellees, for various reasons.

It is the well-established rule of law, however, that in an action of this kind, where the evidence shows that defendants have destroyed all records as to the business done by them, making it impossible to definitely determine the amount of gas and oil sold, then the parties claiming an accounting will be permitted to prove the same by secondary evidence,.showing the amount of gas and oil sold at other stations similarly situated. Such evidence is the next best evidence, and, as such, is competent. 22 Corpus Juris, 109, section 50; Wallace v. Berger, 14 Iowa 183; Warren v. Crew, 22 Iowa 315; Turner v. Hawkeye Tel. Co., 41 Iowa 458, loc. cit. 461, 20 Am. Rep. 605; Meyer v. Gotsdiner, 208 Iowa 677, loc. cit. 681, 226 N. W. 38; Hanson v. Lessee of Eustace, 2 How. 653, 11 L. Ed. 416, loc. cit. 438; Equitable Life Assur. Soc. v. Winn, 126 S. W. (Ky.) 153.

In Wallace v. Berger, 14 Iowa 183, loc. cit. 186, the defendant failed and refused to produce its books and records showing the amount of business done and lumber produced. That was also an action for an accounting and profits, and therein this court said:

"This depends very much, and indeed almost entirely, upon the *amount of lumber made* during the existence of the copartnership. To show this, two methods readily suggest themselves. The one *is to prove* by those conversant with the business of the mill, the *probable amount sawed,* in view of its capacity and the actual work done, *and its value.* The other, better, and of course vastly more satisfactory method, is to show by the books kept * * * the actual receipts and expenses for the entire time. * * * The books will show the amount of business done, to whom lumber was sold, from whom money was received, the amount of expenses, and very nearly, * * * the exact condition of the copartnership at the time of the dissolution. * * * While respondent was not compelled to introduce the books of account until required, * * * yet he might have done so, and settled this question * * * beyond any controversy." In that case, secondary evidence was admitted to show the amount of lumber produced and its value.

In Meyer v. Gotsdiner, 208 Iowa 677, loc. cit. 681, 226 N. W. 38, 39, this court said:

"It is equally well settled that, where one voluntarily destroys evidence of a claim asserted by him for money due, a presumption is created against him.

"The deliberate destruction of written evidence, such as books of account, * * * records, * * * gives rise to an inference that the matter destroyed or mutilated is unfavorable to the spoliator. This inference will not, however, dispense with the necessity for the introduction by the other party of some secondary evidence as to the contents of the document to prove facts which such party claims would have been shown thereby; it merely diminishes the force of the spoliator's evidence and enhances the probative value of that adduced by his opponent. The inference cannot operate where there is positive evidence of the contents of the instrument destroyed." 22 Corpus Juris, 109, section 50. The other cases hereinabove cited are of similar import.

Under the evidence in this case, it is conclusively shown that it was impossible to definitely ascertain and fix the quantity of gasoline and oils sold at the filling station in question, by any books or records. It was, therefore, permissible for appellant to

introduce the secondary evidence offered for the purpose of showing the quantity of gas and oil that was probably sold at the station in question. There was no error in the admission of such testimony in so far as it related to the probable quantity of gas and oil sold at the station in question, and for that purpose was admissible as the next best evidence.

II. Similar evidence was offered by appellant showing the income and profits derived from the sale of Standard Oil products at such other Standard Oil Company stations referred to in Fairfield. This evidence was offered to show the probable income and profits made by the defendants in the operation of defendants' filling station during the time in question. Such evidence might have been competent for that purpose if no other evidence was reasonably available to prove the profits that could be made from the sale of the *kind of gasoline and oils sold by the defendants,* provided the *kind sold by the defendants* was similar at least in price to that sold by the other Standard Oil stations at Fairfield. There was no evidence, however, tending to show that the profits derived from Standard Oil Company products were similar to profits that could have been made from the products handled by defendants. This is an action for an accounting *for the profits* made by the defendants from the sale of their products *at the station in question.*

It may be conceded that the evidence in this case fairly shows the *quantity* of gasoline and oils probably sold at the defendants' filling station during the period in question.

The theory upon which recovery is claimed is that the defendants were trustees for appellant in the operation of the station in question, and, as such, must account to plaintiff for all of the "profits" derived from said station during the period in question.

Testimony was offered, over proper objection, showing the profits made from the sale of Standard Oil products sold at three Standard Oil stations belonging to appellant in the town of Fairfield during the same period. If this case had been founded upon an action for damages, such evidence might have been sufficient to warrant a finding in a substantial amount against the defendants. It is not, however, based upon a claim for damages, but is an action for an accounting for the profits made by the defendants in the filling station in question. This is shown both by the prayer of plaintiff's petition and in the relief awarded

appellant pursuant thereto under the original decree referred to. Appellant claims the exorbitant sum of $17,900 for profits alleged to have been made in this small station during a period of about 2½ years. It is, therefore, incumbent upon the appellant to establish by competent evidence the amount of profits made by the defendants in the operation of the station in question. The evidence shows without dispute that the profits made in the operation of the filling station in question *is the difference between the wholesale and retail price of products sold by the defendants* at the station in question.

"Profit," as defined by Webster's New International Dictionary, is "the excess of the price received over the cost of purchasing and handling, or of producing and marketing, particular goods," and "excess of income over expenditure, as in a business or any of its departments, during a given period of time."

Plaintiff admits that "the profit is the difference between the wholesale or tank wagon price, and the price at which it is sold," and claims "a right to recover the difference between the wholesale price to him and the retail price to the customer." How, therefore, can the profits be determined without any evidence as to the cost and sale price of the products handled by defendants? Appellant concedes that they had no knowledge of such prices. Plaintiff's expert testified:

"We do not have a record of any kind *as to the price at which Mr. Auckland would sell his gasoline or oil* or how much money he would collect from sales, or whether he would lose on account of not being able to collect accounts. As a matter of fact, we didn't have any sales record of stations like Mr. Auckland's. *We never paid Mr. Auckland any commission whatever.* We sold him gasoline and oil at the wholesale price and we have no record of the prices which he in turn sold the gas and oil for from the station."

Plaintiff attempts to show the probable profits received by the defendants from the filling station in question, by showing the profits made from the sale of Standard Oil products at other Standard Oil stations similarly situated in Fairfield. Of course, they knew the wholesale and retail prices at which the *Standard Oil products* were sold, and that the difference between such prices *was the profit at such stations*. The trouble with appellant's showing is that it is based entirely upon sales of a differ-

ent kind of gas and oil *from that sold by the defendants* during the period in question. The evidence shows that after the 3d of March, 1930, the defendants were unable to secure Standard Oil products for the station in question, and used products purchased from other companies. There is *no testimony in the entire record showing the cost of the products sold by defendants at the station in question during the time in question; nor is there any evidence in the entire record showing the cost of said products to the defendants or the price at which they were sold to their customers.*

Secondary evidence as to profits made by the sale of Standard Oil products is of course not competent to show profits made from the sale of *another kind of products* by the defendants. This is particularly true if evidence of the wholesale and retail prices of the products handled by defendants *was easily available to appellant.* Plaintiff knew from the time the preliminary decree was entered that defendants would be held to account for the profits made by them during the period in question. The best evidence of profits made from the sale of the products handled by defendants must be based upon the difference between the wholesale and retail prices at which such products were purchased and sold. Appellant had ample time in which to secure this information before the hearing on the application for an accounting in court. It would have been a simple matter for the Standard Oil Company to procure this evidence, either by asking defendants at the hearing, or by asking the company from whom defendants purchased their products. This could have been no secret. The retail price could more easily have been obtained by the purchase of a few gallons of gas and oil at the station in question, As there is no such evidence in this case, it necessarily follows that it was impossible to determine the profits derived by the defendants from the *probable quantity* of gas and oils shown to have been sold by defendants at the station in question during the period named.

It will not do to say that a party can recover $17,900 as profits alleged to have been made at the filling station in question during a period of 2½ years by simply showing the *probable quantity* of products sold, without showing the *kind of products sold or the prices at which they were bought and sold.* This cannot be accomplished by basing a conclusion as to profits upon a similar *quantity* of an entirely *different kind* of gas and oil.

In an opinion rendered by the lower court just before the final decree was entered, it is suggested that the measure of plaintiff's recovery was the profit which the plaintiff would have made if it had operated the station under its lease with Stubbs, and its agency agreement with Auckland, and that because the profits would have been solely the property of Auckland, the plaintiff consequently failed to show the loss of profit to appellant, and, therefore, it is not entitled to any equitable relief.

Appellant claims to be surprised at this view of the court, and, after the judgment was entered, filed a motion for a rehearing upon the grounds that the rule of damages applied in the opinion was substantially different from the rule announced in the original decree, providing that "plaintiff was entitled to an accounting from the defendants for the profits earned by them in the operation of the station in question, during the time in question."

Appellant claims that it failed to introduce evidence showing the wholesale and retail price of the products handled by defendants, because it was surprised at the court's change of view, and because it relied upon the original theory of the court that defendants would be held to account for the profits made by defendants at the station in question. It is difficult to see how they can allege surprise as a reason for not producing this testimony, when it was appellant's duty, under its original theory of the case, to produce evidence of the profits that were made by defendants in the operation of that plant. Such profits could only be established by showing the difference between the wholesale and retail cost of the products handled by the defendants during the period in question. Appellant is, therefore, not in a position to allege "surprise" as a reason for not producing or attempting to produce the evidence necessary to establish its case, *under its own theory of the law.*

Notwithstanding the suggested reason of the court in its preliminary finding, the record shows that the final entry of judgment recites:

"The court *further finds* that *there is no competent and sufficient evidence* from which this court can determine that the defendants operated the service station in question at any profit to themselves * * * from March 3, 1930, to and including the 15th day of October, 1932.

"It is, therefore, ordered, adjudged and decreed that plaintiff's application for judgment against the defendants * * * for claimed profits in the operation of the service station in question * * * be and the same is hereby denied."

This *further finding* of the court on entering its final decree was sufficiently comprehensive to include the theory on the question of accounting for profits contended for by appellant from the commencement of this action. Plaintiff admits that it "did not attempt to prove by the defendant * * * or any other party, the cost of the gasoline and oil to the defendant during the period in question." Therefore, it cannot now be permitted to say that such evidence was omitted by an oversight, as such evidence was one of the necessary steps to establish the profits alleged to have been made by appellees. As it has failed to prove the elements necessary to establish the amount of profits made by the defendants during the period in question, it necessarily follows that the judgment of the lower court was correct.

In order to prove the amount of profits made by defendants, it was necessary to establish two things: First, the quantity of gasoline sold; and, second, the wholesale and retail price thereof. The first element has been established, but there is absolutely no evidence showing the wholesale and retail price of the products sold. Without proof of both of these elements, the profits derived from the sale of such products cannot be established. It cannot be assumed without such evidence that the prices of the products sold by defendants were the same as those of Standard Oil products sold at appellant's other stations in Fairfield. This issue was in the case from the beginning, and thereunder it was necessary for appellant to show the wholesale and retail price of the gasoline and oil handled by defendants. This was necessary in order to determine the profits made on such products. In the absence of such testimony, it is impossible to determine the profits.

We are constrained to hold that the final judgment and decree of the lower court is right.

As the undisputed evidence shows that appellees appropriated to their own use a tank equipment belonging to appellant valued at $150.72, a judgment in favor of plaintiff in that amount was entered.

500

A motion was filed to strike the transcript of certain testimony filed by appellees. This motion was sustained.

For the reasons hereinabove set out, the judgment of the lower court is hereby affirmed.—Affirmed.

HAMILTON, PARSONS, POWERS, and RICHARDS, JJ., concur.