**In re the MARRIAGE OF JoAnn P. WEBB and Kenneth A. Webb.**

Upon the Petition of JoAnn P. Webb, Appellee,

And Concerning Kenneth A. Webb, Appellant.

No. 86–1157.

Supreme Court of Iowa.

July 20, 1988.

Mark E. Schantz and Barbara G. Barrett
of Dickinson, Throckmorton, Parker, Mann-

heimer & Raife, and Thomas D. Hanson of Hanson, Bjork, & Russell, Des Moines, for appellant.

William L. Kutmus of Kutmus & Pennington, P.C., Roger J. Hudson and Steven H. Shindler of Wimer Hudson, Flynn & Neugent, P.C., William Sidney Smith of Smith, Schneider & Stiles, P.C., and F.H. Becker of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, Des Moines, for appellee.

Considered by HARRIS, P.J., and SCHULTZ, NEUMAN, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

On August 11, 1986, the parties to this appeal, Kenneth and JoAnn Webb, were granted a dissolution of their marriage. The district court, as part of the dissolution decree, divided the parties' property including a business consisting of seventeen nursing homes. Kenneth has appealed and JoAnn cross-appealed, both challenging the disposition of the nursing homes and associated property. Our review is de novo. Iowa R.App.P. 4. Although we are not bound by the district court's findings of fact, we give them weight, especially when considering the credibility of witnesses. Iowa R.App.P. 14(f)(7).

## I. *The Appeal.*

A. The prenuptial agreement. Kenneth first maintains that he is entitled to the challenged property by virtue of an antenuptial agreement allegedly entered into by the parties in 1974. He says it provided that he was entitled to the property he brought into the marriage and all the accretions thereto. He contends that JoAnn would be entitled under the agreement to $10,000, a new car and the property she brought into the marriage. The agreement was not produced at trial. Several witnesses, however, testified to having been told of the agreement's existence and of various portions of its contents. Kenneth argues that the agreement was destroyed by JoAnn in the fall of 1984 while the dissolution was pending.

Iowa Code section 622.32 provides that, in general, no evidence of contracts made in consideration of marriage is competent unless in writing and signed by the party charged. Clearly, however, this statute relates to the allowable manner of proving oral contracts. *See, e.g., Recker v. Gustafson*, 279 N.W.2d 744, 748 (Iowa 1979). It does not, we think, operate to bar proof, oral or otherwise, of an allegedly destroyed written contract. Moreover, in this case no proof has been made that the marriage served as consideration for the antenuptial agreement. *See* 3 *Williston on Contracts* § 485 at 499 (3rd ed. Jaeger 1960) ("The distinction must be drawn between promises of which the consideration is either marriage or promise of marriage and those promises which are made in contemplation of marriage or are conditional on marriage but for which marriage is not the consideration."); Restatement (Second) of the Law of Contracts § 124 comment c at 310 (1981).

Our law provides that, in cases in which the destruction of documents has been demonstrated, secondary evidence is allowable. *See Standard Oil Co. v. Stubbs–Auckland Oil Co.*, 221 Iowa 489, 493, 265 N.W. 121, 123 (1936). The former existence, execution, loss and contents of the document, however, must be demonstrated by clear, satisfactory and convincing evidence. *Craig v. Welch*, 231 Iowa 1009, 1014, 2 N.W.2d 745, 747 (1942). We think the proffered evidence falls short of this standard. No one except for Kenneth testified to having witnessed the agreement's execution. No one except Kenneth testified to having nonhearsay knowledge of the document's contents. JoAnn flatly denied its existence. The district court, armed with its observation of the witnesses, expressly credited JoAnn's testimony as opposed to Kenneth's and that of his witnesses. We give the district court's credibility assessment weight, Iowa R.App.P. 14(f)(7), as that court has the opportunity to observe the demeanor of the witnesses as they testify and to formulate an appropriate impression of the witnesses' credibility based upon that demeanor. *In re Mar-*

*riage of Vrban,* 359 N.W.2d 420, 423 (Iowa 1984).

■ B. Alimony. Kenneth argues that the nursing home business should not be divided and that it be awarded to him in its entirety. One corporation manages the nursing homes owned by the other corporations. This organization effects great economies through mass purchasing. Goods and services for the homes are all purchased through the management company which also employs the nursing home administrators. A preferable result of this dissolution, Kenneth claims, would be to award all of the nursing homes to him, recognizing his greater knowledge, experience and skill related to the operation of nursing homes. According to Kenneth, JoAnn should receive the antenuptial agreement property and a lump sum alimony of one million dollars payable over a six-year period.

We note that the combined income from all the homes over a recent seven-month period exceeded $930,000. Apart from that, however, we do not view this as an appropriate case for resolving the parties' financial affairs by means of an alimony award. Alimony, of necessity, perpetuates a strand of matrimonial association. The parties have elected to sever those ties; the courts should, wherever practicable, accommodate their decision completely.

We recognize that the economies achieved through the management of seventeen homes may be less in a smaller operation. We do not believe, however, this is a sufficient reason to subject one party to the uncertainties of alimony payments so that the other party can own all of the income producing property as an operating unit. Even after division, as provided by the district court, the numbers and size of the nursing homes operated by each party is considerable.

■ C. The equitable distribution. In reviewing a district court's property division, we are guided by the criteria set out in Iowa Code section 598.21(1) (1985). We reaffirm our rejection of any rule based upon a percentage division of the property. *E.g., In re Marriage of Wiedemann,* 402

N.W.2d 744, 749 (Iowa 1987). We are not bound to achieve a precisely equal division in awards of marital property. *E.g., In re Marriage of Andersen,* 243 N.W.2d 562, 564 (Iowa 1976). In general, the division of property is based upon each marital partner's right to a just and equitable share of the property accumulated as a result of their joint efforts. *E.g., In re Marriage of Hitchcock,* 309 N.W.2d 432, 437 (Iowa 1981). The controlling mandate is that courts achieve an equitable and just award under the circumstances. *E.g., In re Marriage of Hoak,* 364 N.W.2d 185, 194 (Iowa 1985).

■ The parties were married in 1974, the second marriage for each. No children were born to the marriage. The marriage lasted ten years; Kenneth was fifty at the time of trial, JoAnn forty-six.

JoAnn has a bachelor of science degree in elementary education and music from Mankato State University. She taught these subjects for approximately ten years prior to her marriage to Kenneth. At that time, she had minimal assets and a remainder interest in a farm. During the marriage she obtained a license as a nursing home administrator.

Kenneth had worked as a vacuum cleaner salesman, a hospital purchasing agent and a nursing home administrator. In about 1967, he leased a nursing home facility in Humboldt, Iowa. In 1970 he borrowed money from a local bank and constructed a fifty-bed nursing home facility at Humboldt.

Over the next fifteen years Kenneth and JoAnn built or purchased seventeen nursing homes, sixteen in Iowa, one in Arizona. These were highly leveraged transactions on which both parties were obligated to pay. By working long hours, living in motels or in one of the nursing homes in the beginning, they were able to make a huge success of their venture.

The district court referred to the challenged property as a "nursing home empire." This characterization is fully supported by the record which reflects the

involvement of seventeen nursing homes owned by fifteen segregable corporations.

Evidence was presented on the business organization, the management responsibilities, the day-to-day activities of the parties and the financial transactions necessary to have achieved the result shown here. The dissolution trial was combined with a hearing on the claimed antenuptial agreement and lasted nearly two months. The trial judge admitted into evidence some 394 exhibits. In its decree, the district court valued the corporations holding title to the nursing home properties as a group at sixteen million dollars; awarding ten homes to Kenneth, seven to JoAnn.

Kenneth contends the district court's division of the nursing homes is inequitable because it is filled with practical and economic problems. While we do not doubt the existence of some such problems, we think the district court, after consideration of these matters, provided a distribution which, with few exceptions noted below, effects substantial equity between the parties. The record reflects this enterprise to be the result of the joint efforts of the parties. While the contributions of Kenneth and JoAnn differed in terms of function, it is apparent that the parties' respective contributions were both necessary for the success enjoyed by the enterprises.

The parties possessed modest assets at the time of their 1974 marriage. Kenneth argues that two nursing homes were among the assets he brought to the marriage and that these should not be considered in the property division. The record discloses, however, that one of these homes was not actually purchased until 1983 and that JoAnn was a coguarantor on the mortgage. The other home was mortgaged within months of the parties' marriage, once again with JoAnn as the coguarantor, and the funds used both to expand the young enterprise and to retire Kenneth's debts. We think these facts clearly disclosed JoAnn's legitimate interests in these two assets.

Kenneth focused his contribution in the managerial and financial aspects of the corporations. JoAnn, as an advertising bro-chure for Quality Health Care Specialists Corporations states, contributed "her extensive administrative and public relations skills" to the enterprise. JoAnn was the coguarantor of all the nursing home purchases involved. Her efforts as a licensed nursing home administrator shown by this record, contributed substantially to the development of this business. This is not a case like *In re Marriage of Hoak*, 364 N.W.2d 185, 194 (Iowa 1985), in which we characterized the wife's interest in corporate stock titled in her husband's name as "purely financial." Here, by contrast and to paraphrase from *Hoak*, JoAnn assisted in the formulation of the enterprise and in providing the impetus which resulted in its current worth. *See* 364 N.W.2d at 194. Equity mandates a post-dissolution compensation for her efforts.

The district court, employing liquidation values, appraised the seven homes awarded to JoAnn at $4,575,036.00. The ten homes and the management corporation awarded Kenneth were valued collectively at $5,675,609. The court divided the corporate debt $996,587 to Kenneth and $476,727 to JoAnn and ordered Kenneth to transfer $500,000 from the management corporation to the corporations awarded JoAnn. Contrary to Kenneth's challenge, we find this division well within the bounds of equity. Were it not for several minor portions of the division which we believe may lead to unnecessary practical problems in the future, we would affirm without modification. We have attempted to avoid such problems if possible. *See, e.g., In re Marriage of Williams*, 303 N.W.2d 160, 166 (Iowa 1981).

■ The district court awarded Kenneth the central office of Quality Health Care Specialists Corporation which is located in Fort Dodge. Directly adjoining this office is the Fort Dodge Villa Care facility which is owned and operated by Fort Dodge Villa Care Center, Incorporated, and Fort Dodge Manor, Incorporated. All of the stock of these corporations was awarded to JoAnn. In order to make completely separate the parties' business interests, we believe Kenneth should be awarded all the aforemen-

tioned stock in the Fort Dodge Care Center, Incorporated and the Fort Dodge Manor, Incorporated. In reciprocation, JoAnn shall be awarded all of the stock in Quality Care, Incorporated, which owns the Woodward Care facility. This division also eliminates potential conflicts arising from the intercorporation borrowing which the record reflects occured between the corporate owners of the Humboldt facilities, awarded to Kenneth by the district court, and corporate owners of the Fort Dodge Villa Care Facility, which we now award Kenneth. We recognize this will result in a decrease of $175,898 in the liquidation value of JoAnn's award, but believe the resulting division to be equitable in light of the circumstances.

## II. *Cross–Appeal.*

■ JoAnn raises several issues on cross-appeal, only one of which we find meritorious. The decree allows Kenneth to exercise a right of first refusal over any of the properties awarded to JoAnn which she may desire to sell over the next ten years. It is clearly the parties' desire to be restored to their separate and independent lives. Consistent with that goal, we should so treat them as far as is possible including their status vis-a-vis one another in their chosen field. Accordingly, we strike the provision.

The decree is affirmed as modified on Kenneth's appeal and affirmed as modified on JoAnn's appeal. Costs are assessed one-half to each party.

AFFIRMED AS MODIFIED ON APPEAL; AFFIRMED AS MODIFIED ON CROSS APPEAL.