In re the MARRIAGE OF Charles E. WILSON and Dolores B. Wilson.

Upon the Petition of

Charles E. Wilson, Appellant,

And Concerning Dolores B. Wilson, Appellee.

No. 88–1422.

Court of Appeals of Iowa.

Oct. 24, 1989.

Keith D. Collins, Waverly, for appellant.

Jerry Zimmerman, Iowa City, and Amanda Potterfield of the Joe Johnson Law Firm, Cedar Rapids, for appellee.

Heard by OXBERGER, C.J., and SACKETT and HABHAB, JJ.

OXBERGER, Chief Judge.

Charles E. Wilson (Charles) has appealed from a dissolution decree, challenging economic provisions. He claims the trial court erred (1) in the treatment of the parties' retirement benefits; and (2) in fixing the value of the marital residence. He further claims on appeal the court should order the parties to file joint amended tax returns to preserve a marital asset. Dolores B. Wilson requests attorney fees on appeal. We affirm.

Our scope of review is de novo. Iowa R.App.P. 4. We give weight to the fact findings of the trial court but are not bound by them. Iowa R.App.P. 14(f)(7). Prior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties presently before us. *In re Marriage of Weidner,* 338 N.W.2d 351, 356 (Iowa 1983).

The parties, Charles and Dolores Wilson, were married in 1949. They have six children, all of whom are now adults.

Charles, 60 years old at trial time, has held a factory job at Amana Refrigeration since 1955. In recent years he has earned about $20,000 per year. At trial time his wage was $9.71 per hour. He has accumulated an Amana pension plan which would pay him around $465 per month if he were to retire at age 65. However, he expressed a desire to retire at age 62 due to arthritis and other health complaints. If he does

this his monthly benefit will be reduced by approximately 18 percent. With Social Security benefits, he hopes to receive $900 to $950 per month if he retires at 62.

Dolores, 57 years old at trial time, has held a factory job with Benco Manufacturing since 1976. She presently earns $7.45 per hour, and she had a gross income of just over $15,000 in 1987. She has a profit-sharing account containing about $6000 worth of stock in Benco's parent corporation. She will receive the proceeds of this profit-sharing account in a lump sum upon retirement.

The parties' primary asset was a house valued by the court at $21,000 and free of debt. The decree awarded this house to Dolores but directed her to pay Charles half its value, or $10,500, at the rate of $200 per month. In addition, each party received a vehicle and various small assets.

The decree also equally divided the parties' respective pension and retirement benefits, and awarded Dolores token alimony of $1 per year in order to preserve the issue if her health fails or if economic conditions change substantially. Charles has appealed from the dissolution decree.

## I. Pension and Retirement Benefits

Charles challenges the trial court's treatment of retirement benefits in three respects.

**A. Division of Benefits.** First, he contends the equal division of such benefits is inequitable in light of his allegedly worse health and in light of the division of other property. He suggests that the retirement benefits be divided in a supplemental order after both parties have actually retired, when the parties' relative needs can be better determined.

■ In Iowa pension benefits are treated as marital property and are properly subject to equitable distribution. *In re Marriage of Mott*, 444 N.W.2d 507, 510 (Iowa App.1989), (citing *In re Marriage of Howell*, 434 N.W.2d 629, 632 (Iowa 1989)). We are not bound to achieve a precisely equal division in awards of marital property. *In re Marriage of Webb*, 426 N.W.2d 402, 405 (Iowa 1988); *In re Marriage of*

*Byall*, 353 N.W.2d 103, 106 (Iowa App. 1984). The proper standard "is that courts achieve an equitable and just award under the circumstances." *Webb*, 426 N.W.2d at 405.

■ We believe the trial court's division of the parties' pension benefits to be equitable. Since Charles has announced he will take early retirement the trial court ruled that Charles not be required to divide any pension and Social Security benefits with Dolores until she actually retires. This deferment was done to ensure that there was an equitable division of the benefits as Dolores will remain employed for several years while Charles is retired.

■ In distributing the pension benefits the trial court awarded Charles a percentage of Dolores' profit sharing benefits. Dolores must pay Charles one half of the lump sum profit sharing benefits she receives upon her retirement. The value will be based on "the amount of cash and stock accumulated at the time of the decree of dissolution, adjusted by monetary inflation or deflation and of the value of the stock on the date of her retirement." We find this distribution scheme proper in this case.

■ The trial court awarded a percentage of the pension and retirement benefits, as they become payable, in the form of periodic alimony in distributing the parties' Social Security benefits and Charles' pension benefits. In light of the Iowa Supreme Court's decision in *In re Marriage of Howell*, 434 N.W.2d 629 (Iowa 1989), the use of the term alimony is inappropriate. The distribution of pension benefits is a property award and not alimony. At the time of Dolores' retirement, Charles must pay one-half of his Amana pension benefits and Social Security benefits to Dolores in the form of monthly payments. Accordingly, Dolores must pay one-half of her Social Security benefits to Charles in the form of monthly payments. For simplification, the decree assumed that Charles' total benefits would be higher and simply allowed him to pay Dolores the sum of one-half his benefits, minus one-half her benefits. We find

this distribution scheme to be proper in this case.

We believe the trial court achieved an equitable and just award under the circumstances of this case. Here both parties contributed equally to a marriage that lasted thirty-nine years. As the trial court noted, "[a]lthough ... [Charles] contributed monetarily more to the marriage, ... [Dolores], in addition to her monetary contribution, also contributed by raising the children and performing the household duties." The marriage ended debt free. Currently, both Charles and Dolores are employed. We agree with the trial court that this is a situation calling for a nearly equal division of the marital assets. We find that the division of the parties' interests in the pension and retirement benefits was reasonable and equitable.

**B. Termination of Benefits.** Next, Charles argues the trial court erred in failing to terminate alimony upon Dolores' remarriage or cohabitation. He asserts that the trial court properly characterized the parties' retirement benefits as alimony and that it would be an injustice to continue these payments upon Dolores' remarriage or cohabitation.

In dividing the retirement benefits the trial court stated "the benefits will be divided equally between the parties *in the form of monthly alimony payments....*" (Emphasis added). Further, the court stated that Charles' monthly payments "shall be awarded to ... [Dolores] *as alimony* until she is deceased." (Emphasis added). Contrary to Charles' assertion we do not read this to mean traditional alimony. *See In re Marriage of Francis*, 442 N.W.2d 59, 62–63 (Iowa 1989) (examining alimony's "broad range of functions"). Charles overlooks the trial court's footnote where it properly notes that "the division of the retirement benefits is a de facto property settlement rather than an award of classic alimony." We read the trial court's use of terms "monthly alimony payments" and "alimony" only to mean the scheme by which the retirement benefits are to be awarded.

The use of the term alimony here is not alimony in its true sense. As previously noted pension benefits are treated as marital property. The purposes of property division and alimony are not the same. "Property division is based on each partner's right to 'a just and equitable share of the property accumulated as the result of their joint efforts.' Alimony, on the other hand, is a stipend to a spouse in lieu of the other spouse's legal obligation for support." *Francis*, 442 N.W.2d at 62.

We understand the distinction between the two concepts and recognize the peculiar relationship pension and retirement plans have with both concepts. These plans are treated as marital property and they relate to alimony because they are substitutes for income. However, as noted earlier, the use of the term alimony when referring to the distribution scheme of retirement benefits (marital property) is inappropriate.

■ Here Charles wants a provision added to the decree that automatically terminates his monthly payments at Dolores' remarriage or cohabitation. Since pension benefits are treated as marital property such awards are not modifiable. Our inquiry is limited to whether or not the award is just and equitable.

■ Upon review of the record, we conclude the trial court did not err in failing to terminate Charles' monthly payments at Dolores' remarriage or cohabitation. In this case both Charles and Dolores contributed equally to the accumulation of property, both tangible and intangible. The trial court divided the marital property equally. Therefore, we do not disturb the trial court's decision on this issue.

**C. Insurance Policy.** Charles asserts the trial court erred in failing to include Dolores' Globe insurance policy in the division of the marital assets.

■ The trial court found that there was no cash value for the insurance policy on Dolores' life. The record reveals that the evidence is insufficient to establish a cash surrender value for the insurance policy. We find no error by the trial court in not

including the insurance policy in the division of the marital assets.

## II. Value of Marital Residence

██ Charles also contends he should have been awarded a larger cash property award for his share of the house awarded to Dolores. He asserts that the house is actually worth $30,000 rather than $21,000, and that his cash award should therefore be $15,000 rather than $10,500. He also asserts that he has put a great deal of valuable labor into the house over the years.

The trial court concluded that $21,000.00 was the fair market valuation of the parties' marital residence. Dolores submitted evidence of a real estate appraiser and Charles submitted his own valuation. We find the value placed on the marital residence by the trial court to be well within the permissible range of evidence and will not disturb it on appeal. *See In re Marriage of Bare*, 203 N.W.2d 551, 554 (Iowa 1973); *In re Marriage of Griffin*, 356 N.W.2d 606, 608 (Iowa App.1984).

## III. Joint Tax Return

Finally, Charles contends Dolores should be directed to cooperate in filing a joint amended 1987 federal income tax return, so that the parties can receive a tax refund. We find no merit in this contention.

## IV. Attorney Fees

██ Dolores requests $910 in attorney fees on appeal. Neither party was awarded trial attorney's fees. Attorney fees are not recoverable as a matter of right but rest within the discretion of the court and depend upon the financial needs of the requesting party and the other party's ability to pay. *See In re Marriage of Orgren*, 375 N.W.2d 710, 714 (Iowa App. 1985). We order each party to pay his or her own attorney fees and the costs of this appeal shall be divided equally between the parties.

AFFIRMED.